Thank you, Your Honor. My name is Adam Gromfin. I represent Plaintiff Appellant Raj Krishnaprabhupta. Here's what I'm having trouble with in terms of that it seems what's really crucial here is what evidence we're going to consider here. And I'd like you to articulate why the Court should admit Mr. Gupta's amended complaint as evidence. And then if it's – does this issue really turn on whether it's – does he have to have it admitted in order to prevail here? MR. KRISHNAPRABHUPTA Well, Your Honor, I'd like to address your second question first. We submit that there's plenty of evidence in the record based on internal prison documents alone, documents that Mr. Gupta submitted with the summary judgment papers, in addition to the findings of the lower court and the declarations of defendants, that there's sufficient evidence in there that this Court could find a retaliatory motive lied behind defendants' actions. JUSTICE KENNEDY I'm looking at the opposition to summary judgment. And I'm looking for the cognizable evidence. And I don't see it. MR. KRISHNAPRABHUPTA Your Honor, that evidence lies in the fact that defendants – well, there's two bases. JUSTICE KENNEDY Let me explain what's on my mind. MR. KRISHNAPRABHUPTA I'm sorry. JUSTICE KENNEDY You don't want to know what I'm getting to. There's a decision that we have out called Parman v. San Francisco Unified School District. It says that the judge does not have to go through the entire record looking for any evidence that might set up a genuine issue. The judge need only read the opposition to the motion for summary judgment and look for cognizable evidence. The idea is that a lot of these files get long and confusing. So the judge can read the opposition to the motion for summary judgment, look for Rule 56C, Rule 56E cognizable evidence, and if it's not there, it's all done. And I left – I think there's a loophole in Carmen for where there's a plain and explicit direction to the judge to look at such and such in the record, which is cognizable, in order to avoid unnecessary xeroxing. And that's it. So tell me what excerpt page number or whatever to look at. Well, Your Honor, I think this Court doesn't need to look much further than page 319 in the excerpt of record, which is an internal prison document that Mr. Gupta highlighted in his summary judgment papers. And on that page, the Court finds that when Dr. Green sent Mr. Gupta into segregation, he said that Mr. Gupta was a threat. And then 10 days later, after Mr. Gupta is released and Dr. Green is interviewed in connection with it, Dr. Green says, well, I exaggerated. Are we looking at this confidential letter, 446, from H. Green? I don't have a page number on that. No, Your Honor. It's an internal Department of Corrections document. And if I could quote from it. Okay. It says, Chaplain Green – I'm sorry. I'm going to start a little earlier. Information involving this incident revealed that Chaplain Green did not issue inmate Gupta an RVR because it was not so much as inmate Gupta threatened him as it was that Chaplain Green felt uncomfortable around him. Chaplain Green revealed to Lieutenant Peterson that he did not feel inmate Gupta needed to be retained in ASU. However, he did not want to hire him back as a clerk. I think right there is substantial evidence, or at least evidence that draws into doubt the question of justification. I don't see why it is. I mean, the chaplain says, well, he didn't in so many words threaten me, but I feel uncomfortable around him. And often you're scared of somebody for good reason before they give you the real, plain, explicit language to hang it on. Well, I think the problem, Your Honor, is that Dr. Green can't decide whether Mr. Gupta is a threat or not. Is that originally, for instance, he fires him and says he wasn't a good clerk. And then Mr. Gupta comes forward with tons of evidence. He can't decide. He says he's scared of having this guy around him. No, I understand. What I was trying to show you is that over time, I'm sorry, Dr. Green says, well, he was a threat. He should be in administrative segregation. And then later on, well, he wasn't really that much of a threat. And now in his declaration, he says again he was a threat. And so it's just not clear what his real justification is. It seems like, you know, that it's an after-the-fact explanation for something that was, in fact, retaliatory in the first instance. To return to Your Honor's first question about the declaration, we submit that the declaration isn't necessary, but that the declaration should be considered, because he did sign it under penalty of perjury. Mr. Gupta's declaration, I'm sorry. Where? In the opposition to summary judgment or somewhere else? In the declaration submitted with his summary judgment papers, he signs at the bottom under penalty of perjury. And the content of those documents, he incorporates by reference his complaint. Where? It goes on for a really long time. Sorry. Well, it seems that the complaint was what the magistrate said, the complaint was not in evidence and had not been signed under penalty of perjury. And then Mr. Gupta countered with that he had incorporated the amended complaint by reference in his signed declaration attached to his summary judgment, his opposition to summary judgment. And somehow then that's how he bootstraps the whole thing. I think that's correct, Your Honor. He incorporates by reference the allegations made in his complaint. And then he swears under penalty of perjury to the allegations in the complaint. I'm looking at page 210. I don't know if that's the right page to look at. But that doesn't say anything about penalty of perjury. It just says respectfully submitted, Roger Christopher Gupta. Even the appellees themselves submit that the declaration was signed under penalty of perjury on page 22 of their brief. I don't care what they said in their brief. What I care about is the evidence. It's on page 182, Your Honor. 182? Okay. Paragraph 3. Got it. And so we submit that the evidence in the declaration should be considered as well. But again, you know, I mentioned only one instance where the ---- When he incorporates it by reference, does he swear that the amended complaint was true? No, Your Honor, he does not. Okay. But ---- That's problematic for him, isn't it? I don't think it's problematic. I think when you swear under penalty of perjury that there's a certain gravity to that and you understand that you're attesting to something that's true. Without ---- I mean, I think that statement's implicit. Without that statement, it would simply be that he was swearing that he incorporated something and ---- But the complaint isn't a verified complaint. Or at least it doesn't appear to be. If there's a verification, direct my attention to it. I can't, Your Honor. It looks like it's not a verified complaint. I can't direct your attention at it, Your Honor. I see that I've gone into my rebuttal time. I'd like to reserve this. Okay. Go on then. Would you like me to continue? Yes. I'd like to reserve this time for rebuttal, please. Okay. Thank you. May it please the Court. My name is Benjamin Rice, Deputy Attorney General and counsel for the defendant Tapeliz. In a retaliation case, a plaintiff needs to show three basic elements. First, they were participating in a constitutionally protected act. Second, that there was some kind of retaliatory act. There was retaliatory intent on behalf of the defendants. That was done because plaintiffs were participating in that constitutionally protected act. And third, was there some sort of injury or chilling effect? Would the adverse action deter a person of ordinary firmness? Could you focus on the record here and tell me why the excerpts don't show retaliation? The excerpts don't show retaliation because, as the Court pointed out, the complaint is not verified to begin with. And the plaintiff was given numerous notices on what they needed to do to oppose the motion. There was a notice filed by defendants saying, look at Rule 56. Here's what you need to do. And the May 22, 2000 order, the Court tells the plaintiff they give them what's referred to as a RAND notice. And, in fact, the Eastern District Court actually makes it easier than what the RAND case says to do. They say you can look to a complaint, but it has to be a verified complaint. So there's this really liberal standard that the plaintiff needs to meet, and the plaintiff doesn't even meet that liberal standard. Well, if the amended complaint is part of the record, does he survive summary judgment? He doesn't. He does? Because he does not survive summary judgment. The reason he doesn't is because there's really no chilling effect in this case. And although this Court, in the case that plaintiff submitted under Rule 28, Rhodes, somewhat holds, you know, they said that we've never held that there needs to be a total chilling effect. And at one point this says there's no chilling effect. Other cases this Court has cited, I mean, every case we've talked about in our briefs, Hines. No response about a chilling effect. Isn't in the amended complaint, aren't there some predictive statements, including telling Gupta that he would fire chapel clerks who filed grievance forms against him, and that Gupta would lose his chapel job if he did not retract the grievance forms? Well, I'll get back to why it shouldn't get in after that. But assuming, again, that those statements get in, again, there's still no chilling effect. What we're talking about here is an employment case. An employer and a supervisor and an employee aren't getting along. And they start right away, you know, it's clear he's uncomfortable around them. He files and he sees them take Bibles. He files a 128 telling him, you're breaking the rules, don't file this. He files, you know, then in response there's an administrative appeal filed saying, I didn't know about that rule, take it back. And then he files saying, you're not doing a good job, you have this ongoing. But does that rise to a level of a constitutional case? I mean, there's no right to a job in federal court, there's no constitutionally protected right to a job, there's no constitutionally protected right not to go to ad seg. What gets somebody into federal court is the chilling effect on the First Amendment. And if somebody's sent to the shoe for a year, certainly that rises to a level of a constitutionally protected act. But somebody transferring jobs, you know, in the end run he's not fired from his job, he's transferred jobs. These two can't get along, he's transferred. He goes ad seg for ten days. Does that rise to a level of a constitutionally protected act? Probably not. Yeah, but if you can't file grievances, the grievances can be of any nature. You know, if you can't file grievances against someone, I mean, that's fairly substantial. It is if the issue is something greater. If somebody files an administrative appeal regarding their coffee being cold and the next day, you know, the prison official says you don't get coffee today, I mean, he has the right to file the appeal, but it doesn't rise to a level that federal courts in 1983 actually need to get involved with. There's a de minimis level of injury which the Constitution does not concern itself with. But to get back, this case is similar in a lot of ways to Pratt, that really the reason is there's no evidence retaliatory intent. The court mentioned the opposition itself is 39 pages. In the middle of this 39 pages on page 11 is this declaration, what's actually called declaration slash statement of facts. And if you look at it the first time I read it, it really is in the spot of the statement of facts. And the plaintiff is being lazy and maybe to make it smaller than the already voluminous 39 pages, he says let's incorporate my complaint into the statement of facts. You know, plaintiff's counsel will have you believe, well, that was enough, that information should get in. And if the judge had allowed it in, maybe it should stay. But the fact is, you know, could he have allowed it in? Yes. Should he have allowed it in? No. Was it an error in judgment? Was it an abuse of discretion to let it in? Absolutely not. As Judge Kleinfeld spoke of earlier and Carmen, it's really not up to the judge to start being an advocate to look through these voluminous pages to find evidence to help him out. There's already, you know, a liberal pleading standard and an even liberal pleading standard for prisoner plaintiffs to get by. And when it gets to a point for a motion for summary judgment, you have a lot of cases that maybe on their face are valid, but that have no merit in fact. And at the motion for summary judgment time, it's up for the court just to look at is this a case that should proceed on. In this case, you have defendant declarations. In opposition to that, you have citations to an unverified complaint. It's not an abuse of discretion to say there's no retaliatory intent shown. Plaintiffs also point to the chronology that this should be enough evidence in itself. But the case of Pratt. I noticed that you overlooked Carmen at least in your table of authorities in the red brief. I did. Were any of these arguments about how far the judge should go ever raised before? They were not. And as you pointed out, I guess they should have been. But the point still was under Rule 56, and without even looking at Carmen, under Rule 56, under the RAND notice he was giving, he didn't meet that standard. He was told what to do and didn't meet that. Moving back to the chronology argument, really the chronology is weak evidence to begin with. There was only the 1602 really talking about the Bible. It's not talking about him not getting along with the defendant. And that's the only 602 prior to the evidence, the 128 stating that he's a bad worker and wanting him out of the job. So the chronology is pretty weak. And as the court in Colon v. Coughlin talks about, that the inevitability of which a prisoner is going to take exception with what prison officials do, if chronology is the only thing, that simply can't be enough. If chronology was enough, you're setting up a situation where prisoners can start, once they get to prison, start filing 602s, file an administrative appeal on any And after that, according to Plaintiff now, any adverse action taken against him, even at one point he talks about the 11 months. In the next 11 months, all of a sudden, not only is this enough for a retaliation case, but it's enough to get past the motion for summary judgment. You're leaving prison officials with exactly what Pratt said not to do, is we have to leave deference and flexibility to the prison officials. And if you let in timing be enough, a prison official is sitting there seeing, let's say we had two inmates, one is a white inmate who filed an administrative appeal and a black inmate who is not. He sees them doing two bad things. They're doing the exact same thing. He thinks to himself, I know he filed a 602 against me, now I'm kind of stuck. If I just, if I go after both of them, not only have I opened myself to a retaliation case from the white inmate, but it's going to get past the motion for summary judgment. I mean, if timing is enough, he just filed a 602 against me two months ago. If he does it against only the black inmate trying to avoid the retaliation case from the white inmate, now he's stuck with an equal protection. You're going after only the black inmates. You're really starting to micromanage the prison system and not affording them the flexibility that they need. In closing, I'd cite the case of Crawford L., which was cited by Judge Kleinfeld in his dissent and ran, that it's the district court that really have the, have the ability to make a summary judgment where a officer's intent is the main issue and that they're the ones that deal with these cases every day. And as I discussed earlier, that there's a lot of these cases in the district court and they're the ones that know at this point should this case go forward. And in this case, the district judge had no evidence to look at and appropriately got rid of the case on summary judgment. If there's no other questions, I'll submit. Thank you. I'd like to address two points very quickly. The first is that Mr. Gupta does not claim he has a, he has a right on its own to a job or to being kept out of segregation. The case of Vignolo v. Miller establishes that even absent, even absent an independent liberty interest, you cannot be retaliated against for exercising your first amendment liberty. That's what this case is about. As far as the Carmen issue, the lower court didn't rest on that. The lower court didn't say we can't find any evidence. There's nothing here. The lower court actually went through and weighed evidence and that's what makes this improper in summary judgment. Which paragraph am I supposed to look at in the complaint? There's just so much paper here. I'm sorry, Your Honor. The paragraph in the complaint is you're assuming that that complaint is cognizable. Which paragraph of the complaint is evidence of retaliation? There's several. It's okay. Give me the numbers. I've got it in front of me. I'd like to put a sticky on it so I can find it, which I have not succeeded in doing yet. Because it would take me a little while to do that and I see I'm running out of time, can I do it? It would be in your case at all. Well, Your Honor, the issue. That's all I want to know. I want to read the retaliation evidence. The retaliation evidence lies in two things, Your Honor. It lies in very suspicious timing. The argument. I want to read the evidence for myself to see why the judge should have said no. The judge should have said no because of the shifting justifications. And this Court has found that when you can't have – when there aren't consistent justifications, there's doubt on the issue of whether there was a penological interest. Ah, and so I read the evidence. It means nothing to me. So where is it? Well, Your Honor, I can't point to that right now. And so because I have a very short amount of time, I'd like to say this briefly. This is essentially a cellotex motion. They came forward and said Mr. Gupta hasn't presented – hasn't presented any evidence of retaliation. And he did. He came forward and he showed that there was threatening statements. He showed that there was shifting justifications. And he shows that every time he filed a grievance, he suffered an adverse consequence shortly thereafter. And that is a cognizable claim of retaliation. I see that I'm out of time. Thank you, Your Honor. Thank you, counsel. Gupta v. Green is submitted. And now we'll hear the same Gupta but different defendant, Gupta v. Ross. Good afternoon, Your Honors.
judges: Oakes , Kleinfeld, Callahan